Good morning, Your Honors. May it please the Court, Mark Millard, Counsel for Appellants Mamadi Hassanati, et al. We come before this Court today following a dismissal of our action following two motions. One, plaintiff's motion, the appellants seeking leave to have the Court appoint personal representatives and plaintiffs named in the complaint. After denial of that, the Court then granted summary judgment on the basis that the plaintiffs were not the proper plaintiffs in the case. The Court ruled that plaintiffs did not act within a reasonable time, the premise for its decision. There are a couple other sub-issues that were relied on by the Court that are also problematic and we contend are in error. First, I want is the actual dismissal as opposed to the criteria required for the appointment or the judicial approval of the personal representatives. On that issue, for purposes of today, I will submit on the briefs. I'd just like to argue the dismissal. Rule 17a is the premise. But, Counsel, you gave an explanation to the Court of the reason, I think it was a two-year delay. You said there was difficulty in communication. It was a very vague explanation. There were almost no facts in the explanation. First of all, that was not the reason for the delay. It was stated as a fact. The Court grabbed hold of that, believing that that was the primary reason. Certainly, that was a factor in place. When this case was filed, it was filed in state court. It was properly filed by all the successors and interests guarding the lives of the minors. Every error was named in that state court complaint. We were subsequently removed to the federal court. Then a motion was filed contending that this was a DOSA, Death on a High Seize Act case. That motion was granted with leave to amend. We amended. Pursuant to DOSA, the case must be brought by personal representatives. We filed a complaint. We had not yet, and we acknowledge that throughout the course of this litigation, we had not obtained any form of judicial approval before doing that. We did believe, and we filed papers in this regard, that specifically with regard to the particulars of this case, that the DOSA action is brought by foreign nationals. Defense was advised of all those foreign nationals' residences and status of their citizenship a year before the motion for summary judgment was filed, that we believe that because of DOSA, foreign representatives, that this court, the District Court, had the authority to appoint the representatives, personal representatives, the plaintiffs we named in the complaint. We asked the court to do that. We submitted an affidavit. You thought the District Court had the equivalent power of a probate court? We didn't believe it was even probate. We didn't believe that because of DOSA, and DOSA requires that the court make the allocation of the recovery. But I think the record somewhat belies what you're saying here because it seems that there were repeated discussions that you needed to get personal representatives, you know, the appointments, and it seems from a fair reading of the record that you understood that that had to happen through state court. And so I can see why the District Court was somewhat frustrated throughout the course of this litigation, especially at the end when she found out that you hadn't done that and there was sort of a representation made that that was already taken care of for that last amended complaint. So I'm trying to figure out, and this is your opportunity to tell me how you didn't know that the personal representative appointment had to take place. I mean, it seems like you acknowledged to the District Court before the last amended complaint or at the last amended complaint that that had been taken care of, and it hadn't. Here's how it played out, is that the motion was granted to make the plaintiff's amended complaint to conform with DOSA. It was at that point that the requirements were discussed that DOSA requires a personal representative, there's certain other allegations that must be made to conform with the Death on the Side Seize Act complaint. We filed that complaint. And what we did, Your Honors, is we continued to move this case forward. This is not a case where you stood still and stood idle. Discovery took place. Various agreements were made to conduct depositions. I understand. It seems like you were going forward, but you hadn't done a critical piece here and a very simple, basic piece, an extremely important piece of the litigation, and that was to make sure there had been or you'd obtained an appointment of personal representatives for the decedents. And again, we believed all along that the District Court had the power to do that. We filed the motion to do that. And we're collecting the evidence and the signatures and the affidavits to get that done. And when that was in place, we filed our motion. Counsel, let's assume that you really thought the District Court had this power. Correct me if my timeline is wrong here. September 7, 2011, the District Court makes it clear that you must have a personal representative appointed under DOSA, correct? That wasn't the specific issue under that ruling. It was part of the DOSA requirements that a personal representative was required. But that was on September 7, 2011, correct? That is the correct date. Okay. Then you don't file a motion to appoint anyone as a personal representative until July 1, 2013. Is that correct? That's correct also. Okay, so that's almost two years. That is correct. So even if you thought you could do it in federal court as opposed to state court, I'm trying to understand, and I think this is part of Judge Merguia's question, two years. And in fact, a year after the statute of limitations expired, why did it take two years to file it in the wrong court? The point was this, is we were moving the case forward. But counsel, hold on. The District Court said, that's like saying, well, we built the house and we were going to get the permit at some time. I mean, the rule is you've got to get the permit first before you build the house. Why did you wait two years to effectively get the permit here? It just was the process we were in, the process of moving the case forward, the process of obtaining affidavits from the foreign individuals in France and the Cormos Islands. And we understand the issue of delay. We understand that the court was concerned. We understand this court is concerned. But to note that with regard to amendments and complaints, that even this court has talked about, that delay alone cannot be the basis. It's an abuse of discretion for District Court to dismiss on that grounds alone when there's no prejudice shown. In this case, the defense was aware of the entire time. What do you mean prejudice shown? I mean, when you say that there's no prejudice shown, you proceed forward and the people that you are claiming to be, you know, the personal or that you think are the heirs of the decedents, and they're not really the people who are the heirs of the decedents. How does the other side get to, you know, know that? And they have a right to know that. That's why there's an appointment of personal representatives that takes place at the very beginning. They know from the very beginning of this case, especially since we filed on behalf of all the heirs in state court, who exactly the heir were. Secondly, filed in their papers was a letter from Clyde Company in France that went through every plaintiff in the case and determined who the personal representatives were and whether or not states had been established or not. So they performed some investigation. The cases have also talked about waiver. Waiver when the fact that defense waits as long as they did to raise the issue. If you could just tell me, was it too hard to get the appointments over at state court? Is that what you're saying? Or are you just saying it was a rule we didn't really think was that important? Not that it wasn't important, but not that it was time-sensitive to us, that the case moving forward was more important to us. Despite the repeated nature of the times it came up and you were told that that needed to happen? Respectfully, Your Honors, it only came up one time. And the time that it came up is when there was a motion to make plaintiffs refile their case under DOSA. And under DOSA, the discussion was generally DOSA, not the specific requirements. Correctly, it was mentioned as part of those requirements that a personal representative was required to bring the suit, and we did so. I would remind the court that, again, delay in and of itself is insufficient basis. This court has reversed lower courts for finding that the amendment was inappropriate if it was based only on delay. In the cases Bowles and the cases Howey, it was cited in Bowles. Both of those cases addressed the same thing, that delay in and of itself is not a sufficient basis. The criteria goes down to prejudice. There's no prejudice in this case. The defense knew entirely the entire time who the parties were, who the heirs were. We asked the court for the reasonable amount of time to amend the complaint, to obtain these, for whatever process. If the court could not do it itself to allow us the reasonable amount of time, we presented that amount of time to the court, take three to four months, at which time the case would continue to move forward. There was going to be no delay, therefore, no prejudice. A question came up before the district court at the hearing on the defendant's motion to dismiss whether the plaintiffs may pursue their actions or relief in foreign courts. Is that happening? Is my understanding correct that nearly all of the plaintiffs have actions pending abroad? There were actions pending in France. It's a criminal procedure that takes place after an aviation action there. That has been resolved. The cases have settled or are settling there for a number of plaintiffs involved in that case. I would note also, and I meant to say this, there's also a companion case now pending in the same district court, same accident, same flight for additional passengers of the plane. It was brought under the Comeron law, which had a, I don't know, a lengthy statute of limitations period, and they're allowed to bring that in there. You say delay is excused or prejudice and delay is not, shouldn't be the big issue. Have you gotten personal, obtained personal representative appointments for the decedents? Here's what we've done is we advised the court that we'd like to do that. We asked for the time to do that. Have you done it to this date? What have you done with respect to that up to this point today? We've obtained counsel that can do it, put it in place. It's a very expensive proposition. I submitted in the papers the fact that it's in excess of $50,000 to get these plaintiffs. Counsel, I take it the answer is no, you haven't. The answer is no at this time. We're prepared to do that, and it didn't make sense to do that with all these issues pending, as it didn't make sense to do when we went to the district court and asked at that point in time. What we did ask for was three to four months, which probate counsel advised us it would take to get it done. That's still in place. We still believe that's a valid period of time. So under Rule 17A, there had to be an objection made specifically to the complaint, and quite honestly, there never was an objection. Raising it before the complaint was even filed as a preemptive strike that we deem is not an appropriate objection, that had one been made earlier, we could have discussed this earlier, the delay would have been less. However, more importantly, is that this is a matter that can and will be cured, provided simply three to four months to get into probate and have these personal representatives appointed, at which time this case would continue to move forward, as it was at the time of dismissal. And so is it your, are you thinking that, or do you expect the district court to simply substitute the parties, if this plays out the way you would like for it to, assuming you were able to obtain these proper appointments? Or would you have to show good cause under Rule 16 at this point to amend the district court's scheduling order and permit changes to the pleadings at this time? Well, I'm sorry to interrupt. The scheduling order, I think, is not at play at this stage, the case being dismissed. It would have to be reset and re-discussed. But we would, and I think the rules provide that, and 17A suggests that. Once we obtain a judicial appointment of the personal representatives, they would then be substituted in for the named plaintiffs. The errors in the case, the beneficiaries in the case, do not change. The claims do not change. The arguments do not change. The allegations do not change. The damages do not change. None of the parties change but for there's a new person sitting at the head of the table. And I'd like to reserve, if I could, or may, or might, time for rebuttal unless you have another question. Thank you, Kevin. May it please the Court. Christopher Barth on behalf of the Appellee International Lease Finance Corporation. At the heart of this appeal is really appellants' inexcusable compliance with the clear statutory requirements in the Death on the High Seas Act. Contrary to what you've heard, ILFC has continually objected on the grounds of noncompliance with the Act since their first involvement in this case. In fact, that was the basis for the District Court's 2011 order, agreeing with ILFC's objections but giving the appellants the time that they had sought to leave, to amend their complaint, comply by having personal representatives appointed, and yet they chose not to do so but they made the representation within 20 days of that order that, in fact, they had complied by filing their second amended complaint which said it was filed as personal representatives. Well, ILFC, as a defendant in the case, had no basis to challenge that assertion at that point, and so we accepted as true what they filed with the Court under Rule 11, that that was a proper assertion. They pretended with both the second amended complaint and third amended complaint to have complied with the Court's 2011 order. It wasn't until 2013 when we issued discovery asking for the appellants to disclose to us the courts, the documents proving their appointment, that suddenly we see then, within a short period of time after they answered that discovery, their motion to amend, and within a few days, ILFC's motion for summary judgment on the basis that they had not complied with the Court's 2013 order. That 2013 order really sets forth three unimpeachable grounds upon which the Court granted summary judgment in favor of ILFC. The first is the probate exception. The Court has already recognized what the appellants were asking for. When you look at in re martial, it's a pure probate decision. That is issuance of letters of administration so that personal representatives could be appointed. That's the first prong of the in re martial analysis. And they're saying they were mistakenly thinking that the judge in the district court could grant that sort of relief, the appointment of personal representatives. What's your response to that? My response to that, Your Honor, is very basic. That had they simply done their own research, they would have clearly seen that the probate exception would bar the Court because the Court doesn't have federal jurisdiction to actually perform what they're asking for. And they continually characterized what they were asking as an appointment as a DOSA personal representative. That doesn't exist under the statute. There is no section of DOSA that provides for the appointment of a personal representative. So because DOSA is silent on that, we look to state court provisions, which is the California Probate Code. So whether or not they had that belief, it was misguided. And had they done their research, they would have clearly seen that they had to go into state court to secure the necessary appointments. So what is the basis for the dismissal? Their failure to obtain the appointment and their negligence in failing to obtain that appointment? Well, in the standard under 17a, it is that, Your Honor, although it's not a negligence standard, it's more under 17a, was there an excusable mistake? And that's where, when you're looking at relation back and real party and interest, they have to show an excusable mistake in what they did. And here there was no excusable mistake. Are you alleging prejudice as a result of that? Yes, we are, Your Honor. The prejudice was this. First of all, ILC has been defending this case against phantom parties for going on six years now. And, in fact, one of the most significant aspects of prejudice in this case was in 2012, in between the 2011 order dismissing the complaint, the First Amendment complaint on the basis of DOSA, and when they had to leave to fix the deficiencies in their pleading, ILC moved for dismissal on forum nonconvenience grounds, asking the court to send the case to France. The appellants made assertions and representations about how they would bring evidence into the United States. And on that basis, the court should deny the forum nonconvenience motion. By doing that, they were making representations as nonparties. So ILC is having to respond to parties we don't even know if they're the proper party and have authority. Did the district court find any prejudice in its order? It did, Your Honor, in that it found that ILC had incurred substantial sums in defending the case, which is a prejudice that cannot be cured. And also the court looked at the fact that of the FNC, the forum nonconvenience issue, that we had raised this as a motion to dismiss, and it was opposed by basically nonparties. And on that basis, on their representations, that motion was denied. Now, that motion is not subject to this appeal, but it is a focus point for purposes of showing ILC has suffered real prejudice as a result of the appellant's actions. So it's basically a cost of litigating up to this point. Well, and the other problem we have here, too, is – well, no, it's more than that, Your Honor. It's the cost of litigation. It's the fact that we lost a significant motion, which we believe was properly grounded in U.S. law and called for the transfer of this case to France, where, as the Court has already noted, these appellants have had actions pending in France in the Comoros against the airline and have secured judgments against the airline. So it was our position it would have been more cost-effective and likely would have resulted in these cases here today before the Court being consolidated with the airline cases and maybe all resolved. I'm just curious. Have either Yemenia Airlines or ILFC been found liable by any of the tribunals over in France? My understanding, Your Honor, is – well, first off, ILC is not a party to the French or Comorian actions. My understanding from counsel for Yemenia, for at least the French actions, is there are judgments against the airline. Now, these are cases filed under international treats, the Warsaw Convention, Montreal Convention, so I don't know the exact basis for those judgments as I stand here today. But I do know that there are final judgments and that the claimants in those actions are pursuing recovery of those judgments from the airline. How that – what the process is and where it stands today, I do not have that information before me. The second basis I think which the Court should really look at is the district court's analysis of the California Probate Code. So even if you get past the probate exception, there's been a complete noncompliance by the appellants or any proffer of evidence in this case that they could comply with the various listings of specific requirements that apply to securing a personal representative appointment before a California probate court. And what's interesting is that those requirements are even more specific when you're dealing with foreign nationals who are seeking to be appointed personal representatives and especially when there's no will involved. We detail those in our brief, but I would like to highlight some of those. Well, before you highlight that, this is a very thorough decision by the district court, and I was looking for where the district court took prejudice issue into account, and you said, yes, it did. Can you tell me where I find that in the district court's decision? I don't know if I have the reference with me right. It was, Your Honor, I would submit at ER 16, which is the transcript of the oral argument. It's in its decision. Right. It's a very thorough decision. It was a very thorough decision, Your Honor. We agree, very thorough and well thought out. I do have the references during the oral argument where the issue was raised. I unfortunately don't have it at my fingertips exactly where in the decision the court addressed that. Thank you. Going back to the specific requirements under the California probate code, some of the things that the appellants would need to do include they must provide a copy of the document. If it's not in English, have it translated. We haven't seen that here. They must file a statement of personal residence and execute an oath saying that they will fulfill the duties and liabilities of the office of personal representative. We don't have that here. Non-residents must petition for ancillary probate administration. What's important about that is ancillary probate administration in the state of California presumes that there's a primary probate action pending elsewhere. We've seen nothing to that effect. And that's what the Clyde & Co. letter advises that there was no information indicating probate actions were open outside the United States as a result of those French and Camorian actions. But one of the key points, too, is for non-residents of foreign countries who do not possess a will under 8113, they must give diplomatic and counselor notice. We don't have any indication in the record whatsoever of compliance with any of these requirements. And the whole purpose is so that all these claims that we see here today can be consolidated into one personal representative so that ILFC, as the defendant knows, once there's finality as to whatever claims are presented by that personal representative, that that will have raised judicata effect going forward as to any claimants trying to claim through that particular decedent. And we've encountered that in these cases where we have multiple, multiple family members, including extended family members, as who are part of the case today, who under the Death on the High Seas Act are not lineal family members and, therefore, under the Act are not entitled to claim in the absence of their showing a financial reliance on the decedent. So these are all for the protection of ILFC. And the third point the Court raised really addresses the heart of the appellant's appeal, and that's the relation back issue. And, again, appellants must show that there was an honest mistake in what they did initially in order for there to be a relation back. The problem is we don't see that here. And we also don't get relation back because there's no party to whom we can relate back to. The original action filed in 2010 was on behalf of one family. It was not even in the capacity of an alleged personal representative. That didn't come until the second amended complaint after the Court's 2011 order. So what we had was really the original complaint was a nullity. It was filed by a party who had no ability to file that claim under the Death on the High Seas Act. And, as a result, there's no ability here to relate back what appellants are asking this Court to do in reversing the district court's very thorough and well-thought-out decision. It's also amazing that when you look at it, as the Court has noted, from 2011 to 2013 there was nothing preventing the appellants from going into state court and securing or filing probate actions to secure personal representative appointments. We've had no real explanation as to why. But what they're asking the Court to do now is to read into DOSA's clear language in contravention of congressional intent an exception that, if it's too expensive, you don't need to comply. So we've heard that the cost would be about $50,000. Well, what that indicates is there's a lack of willingness to invest in their own case. Big cases sometimes cost a lot of money to get going. Clearly, here, we don't have... You know, the problem I have with this is this case, I mean, this issue really isn't so much about the lawyers. It's really about the question of a lot of people who may have been very seriously damaged who are entitled to substantial relief. Now, you know, what we can do, I suppose, is shift that cost to the lawyers if they were negligent and have them file an ineffective assistance of counsel case or whatever it is we call it. I'm so used to the... Malpractice. ...EDPA. Yes. It's a file a malpractice case, which is really what you're suggesting, that they should be deprived of their right, assuming that otherwise they have a good case. I don't know whether they do. But if they do, the result of upholding this decision is their right to a recovery for the loss of life of many people is forfeited because their lawyers failed to take a necessary step. So, you know, whether you said the lawyers should have invested $50,000, well, I don't know how many lawyers there are who can afford to handle these cases. But there are some, and I assume the firms involved in this could do it. But whether they did or not, it seems to me the question, what are the standards for dismissing the case? I think you've given a number, and I should ask whether the district court considered and weighed the prejudice because that's something that, as I understand it, is a factor that And what do you consider to be the standard for determining this violation of the rules? Well, Your Honor, I think what's really instructive are the cases we cited in our brief. And they arise out of the in-ray air crash off the coast of Nantucket. There's two companion cases in that. The first case, you see the district court dismissing the case against the plaintiff Mohamed on the exact same basis we have here today, that he filed claiming to be a personal representative, in fact was not. Mohamed then turns around and sues his lawyer for malpractice. And that's Mohamed versus Donald J. Nolan. What's interesting about those two cases is that in the second case, the Eastern District of New York said, basically, you plaintiffs chose your lawyer. Whatever the lawyer does on your behalf, whether it's proper or not, is you have to deal with that. That's your decision. You selected that lawyer. If they're negligent in how they handle your case, that is basically your issue. That's not the issue for the defendant against whom you filed these claims. And I would submit, Your Honor, that's what we have here today. Without really getting into the issues of what the lawyers did, my point is we know what they did in relation to what the requirements were under the Death on the High Seas Act. And they failed to comply with the very clear requirements of pursuing actions as personal representatives. And so on that basis, Your Honor, I think the district court was right in finding on the three grounds that it did, that summary judgment was warranted and to deny the request for leave to amend. Thank you. Thank you, Your Honor. Thank you. With regard to prejudice, which he highlighted as a significant issue in this case, there was none shown in the lower court. At the hearing on the motions, counsel was asked what the prejudice was. There was one single instance where a name was incorrectly placed in the complaint as a plaintiff. That is easily corrected. The point is this. Even though the Bowles v. Reed Ninth Circuit case, 198F3752, which also cited Howey v. U.S., 41F2nd 1187, they said delaying it of self is insufficient. Your Honor pointed out the fact that we have a viable case, we have a righteous claim, we have plaintiffs to deserve recovery. I don't know whether it's a viable claim or a righteous claim. I understand. But assuming that there would be. Understood. That they have the right to proceed unless there's some prejudice that can be shown. There is, quite frankly, none in this case. Well, in those two cases you cite, Howey and the other one, I can't remember what you just said. Bowles. What was the reason for the delay? Was it the lawyer not proceeding and filing these kind of appointments? Or what was the reason for the delay? There was a number of different. In Bowles, it was a dispute as to which was the proper person to file the complaint, whether it was by the estate or by the individual. It was a resupplant case of a retired employee. Bowles settled the case, and then the individual settled the case, and the estate tried to step in. The court granted the MSJ based on the estate not being the right party. On the Court of Appeals in the Ninth Circuit held that that was inappropriate because the basis was the time delay that took place there. And the court said you can't dismiss it's inappropriate because of the rights of the parties involved without a showing of bad faith tactics, which, by the way, in our court, the lower court, made a ruling that there was no such bad faith tactics. There was no tactical maneuvering in place. Even courts have said, and Esposito, which is cited in our brief as well, Ninth Circuit case, said even when it's an obvious mistake and one that should have been known, it's still inappropriate to dismiss. It's abuse of discretion. If you can't show that there was some bad faith tactics in play or there was some prejudice to the defense. Defense argued that the prejudice is the fact that because the case is dismissed, they've been harmed financially. That's not how we evaluate prejudice. We evaluate prejudice as what prejudice was there at the time, and if amendment was allowed, would they be prejudiced? The opposite is true. But, counsel, I guess I'm still trying to understand. Maybe there was a mistake here. You thought you could do it in federal court and not state court. Fine. But it's that timeline, July 2011 to June 2013. No actions are taken to do what the court said and what apparently in your complaint you averted you had done. So based on that, how is that an excusable mistake under Rule 17? Well, under Rule 17 it doesn't talk about excusable mistakes. It talks about honest mistakes. Were we trying, in other words, the case Esposito talks about it, is that we're the parties trying to conduct some kind of tactical maneuvering to get an advantage on the statute of limitations. We were not doing that. We had the case filed. We had the parties in place. We believed we were the proper parties. Right, but what about the parties doing what the court said you needed to do? You can just ignore that? Well, it wasn't ignored. It was a process that was taking place, and we acknowledge that it took a length of time. Everybody has had problems with it, the trial court and your Honor as well, and we acknowledge that. However, it wasn't a disregard for it. We did eventually come up with the procedure to take that and have come up with the ability to cure that defect and allow these parties to continue forward with this case. One last point I want to make on waiver is the only defense in this case, in cases of reverse dismissals based on waiver, when the affirmative defense is insufficient under 9A of the federal rules, there must be a specific statement as to what the defense is. In this case, the only affirmative defense is that the parties plaintiff lacked the capacity. There's no specific statement in there. The case of SROCK, S-R-O-C-K versus U.S., 2006 Westlaw, 2460769 at 3, Eastern District of Michigan case, evaluated that. Since such boilerplate general statements are insufficient, defense answer is not a specific negative element within the meaning of Rule 9A, especially where plaintiff sues as a personal representative, and this is a matter of public record, easily ascertainable. So this case could be deemed as a waiver because there was no defense filed. There was no affirmative defense appropriately stated in this case. So based on the fact there's no prejudice, based on the fact the court found there's no prejudice, the court found there were not tactical maneuvering in place. The court found there was no prejudice? The court did. They asked counsel on the record whether or not there was any prejudice involved. And, again, the only instance cited was the fact there was one incorrectly named plaintiff, which has been corrected. And upon amendment with the proper purpose. Where does the court say there's no prejudice? Cite the ER, please. Well, I'd have to find that. It was in the court's transcript of the hearing. The court asked counsel directly. It's in the briefs. I've cited it in the briefs. Asked counsel directly what is the prejudice. The only prejudice stated was the fact that there was an individual plaintiff inappropriately named, that they were called to defend against that plaintiff. It might be true if it was the only plaintiff, however, it's not the only plaintiff. They were defending anyways. Well, just before you leave, I think what's disturbing to Owens and others as well, is that you filed an affidavit about why there was this delay. And what you said in your affidavit was, unfortunately, shortly thereafter, plaintiff's Camorran counsel became unavailable for quite some time, causing communication problems with the Camorran plaintiffs. This matter has now been fully rectified. To establish facts to justify a two-year delay, that's a rather thin explanation of why nothing happened for two years. It's your affidavit or your declaration. Your Honor, I acknowledge that. That was not the basis of the delay. It was a factor that took place, a part of this, of us putting together the affidavits that we presented as part of our motion to appoint before the district court. So I acknowledge that, that that is not a complete basis or explanation for what took place. It's simply a factor of what was taking place at the time. All right, thank you, counsel. Thank you, Your Honors. The case that's argued will be submitted.
judges: Reinhardt, Murguia, Owens